FILED

JUN 2 4 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MANUEL LICUDINE
43 GRAHAM STREET, EBB
2200 OLONGAPO CITY
PHILIPPINES 601

Case: 1:08-cv-01086
Assigned To : Urbina, Ricardo M.
Assign. Date : 6/24/2008
Description: Employ Discrim.

VS.

THE HONORABLE DONALD C. WINTER
SECRETARY OF THE NAVY, DON # 086158100514
DEPARTMENT OF THE NAVY
HUMAN RESOURCES OFFICE
(YOKOSUKA, JAPAN)
PSC 473, BOX 22, N134
FPO AP 96349-0022

JURY ACTION

## COMPLAINT

I filed a discrimination complaint through the United States Department of the Navy, Human Resources Office, (Yokosuka, Japan), PSC 473, Box 22, N134, FPO AP 96349-0022, about the Department's noncompliance in the implementation of Office of Personnel Management's (OPM), about Public Law No. 100-238, Section 110, that provided to any individual meeting the definition of an "employee" as defined at 5 United States Code (USC), section 8331(1) to avail of having to make a deposit to the Civil Service Retirement and Disability Fund (Fund) for those employees of the Federal Government where no timely retirement deductions to the Fund were withheld from their salary. The Department of the Navy under the law, was the sole agent of OPM in this matter, failed to inform me (us) about the law's implementing rules and regulations during the time frame mentioned under the law

RECEIVED
MAY 29 2008
Clerk, U.S. District and
Bankruptcy Courts

1

from January 8, 1988 until January 8, 1990, and when the Navy left the Philippines in November 1993, and later came to know about the law in 2007, and did filed a claim for discrimination. The Department's rejected my claim on the ground that I have no right to come within Title VII of the Civil Rights Act of 1964, as amended, pursuant to 29 Code of Federal Regulation (CFR) 1614.103 (c) 4 which provided that "Aliens employed in positions, or who apply for positions, located outside the limits of the United States" are not covered under Title VII.

The dismissal of the complaint read in pertinent part as follows:

> The dismissal of this complaint is not based on the merits of the complaint's claim that he should have been covered under the civil service retirement system. The dismissal of the instant case is based solely on the employee's status as a non-U.S. citizen and therefore he has no standing to file a claim of discrimination under the provisions of reference (c).

Citizenship in the United States-Every sovereign state determine for itself the circumstances which shall be recognize as creating natural or native-born citizenship, as well as the conditions under which an alien may be admitted to membership in its citizen body. Many states adopted their general principle the jus sanguinis, accordingly to which the children take citizenship of the father, or, if illegitimate of the mother. Other states accept the rule of jus soli, according to which a person becomeas a citizen of the state within whose territorial limits he is born. This latter rule is constitutionally obligatory upon the United States ("US").

2

As a result of the Spanish-American War, the US acquired certain territory the inhabitants of which were held to be neither aliens or citizens of the United States.

Sapin ceded the Philippine Islands, Guam, and Porto Rico to the US under the terms of the "Treaty of Peace" signed in Paris December 10, 1898.

In England, a citizen was a person who was born in that country and remained under its jurisdiction. In the rest of Europe citizenhsip was determined by parental nationality. The English version was the prevailing assumption in America. These two doctrines existed at the time the US Constitution was written.

The Fourteenth Amendment to the US Constitution, ratified in 1868 the first sentence of the amendment state that "(a)ll persons born or naturalized in the United States" and subject to its jurisdiction are citizens of the US and of the state where they reside. (See Civil War Amendments).

Following the transfer from Spain of the Philippine Islands to the US in Article III of the Treaty of Paris of December 10, 1898, see 30 Stat. 1254, which ended the Spanish American War. President McKinley established a civil authority over the Philippines known as the Philippine Island Commission. The powers and duties of the Commission were set forth in Presidnetial Instructions to the Commission dated April 7, 1900, and reaffirmed by Executive Order (unnumbered) dated June 21, 1901. By the Act of July 1, 1902, 32 Stat. 691, Congress expressly ratified both the Presidential

3

Instructions and the Executive Order. <u>See</u> <u>Ivanhoe Irrigation District v. McCracken</u>, 357 U.S. 275, 293-94 (1958)/

The Presidential Instructions vested the Commission, effective September 1, 1900, with "that part of the power of government in the Philippine Islands which is of a legislative nature" until Congress provided otherwise or a different central government was established.

The Act of July 1, 1902, in addition to ratifying the President's orders establishing the Philippine Commission, clearly indicated that, while the Philippines were subject to the sovereignty of the US, they were not to be deemed a part of the US for purposes of the applicability of Federal statutes generally. Section of the Act of Congress of July 1, 1902 in Public No. 235, it provides:

> An Act <u>temporarily</u> to provide for the administration of Civil Government in the Philippine Islands, and for other purposes.

Section 1 of the 1902 Act stated as follows:

> The provisions of section 1891 of the Revised Statutes of 1878 shall not apply to the Philippine Islands.

Section 1891, referred to above, provided that:

> The Constitution and all laws of the United States which are not locally inapplicable shall have the same effect within all organized Territories, and in every Territory herafter organized as elsewhere within the United States.

In addition, Congress specifically provided for citizenship for inhabitants of the Philippines that was separate from United States citizenship. Section 4 of the Treaty of Paris contained a listing of Philippine citizenship. It read:

4

> 4. That all inhabitants of the Philippine Islands continuing to reside therein who were Spanish subjects on the eleventh day of April, eighteen hundred and ninety-nine, and then reside in said Islands, and their children born subsequent thereto, shall be deemed and held to be citizens of the Philippine Islands and as such entitled to the protection of the United States except such as shall have elected to preserve their allegiance to the Crown of Spain in accordance with the treaty of peace between the United States and Spain signed at Paris December tenth, eighteen hundred and ninety-eight.

The object of these temporary provisions were to maintain the responsibility of the US for the general conduct of the Civil Government prior to the inauguration of the Philippine Commonwealth Government, at the end of which the islands were to become a "state."

Congress passed the so-called "Tydings-McDuffie act," approved by the President on March 24, 1934, called the "Independence Act of 1934." This Act have brought a <u>change</u> in the status of the islands, and thus <u>created</u> the "Commonwealth of the Philippines" attaining its new standing as "COMMONWEALTH OF THE PHILIPPINE ISLANDS," as now a "'state'" though not an independent state. <u>See</u> attached copy of a National Archives reference report relating to US Treaties and International Agreements, part of which, analyzing the status of the newly created "COMMNONWEALTH OF THE PHILIPPINE ISLANDS," as part of the Union of American states.

Both the Acts of Congress and the ordinance appended the Constitution of the Commonwealth of the Philippine Islands show clearly that it was intended that full sovereignty over the Philippines was to be retained by the US during the transition

5

period of ten years (November 15, 1935 to July 3, 1946), provided for in the Act. They show that, while the government of the Philippine Islands was to have a large measure of self-government, they were not to constitue a separate state under the rules of international law. In other words, it was clearly intended that the United States and the Philippine Islands should constitute a singel state.

Therefore, under the default rule in the Treaty of Peace, those born on and after November 15, 1935 but before July 4, 1946, were citizens of the United States under the doctrine of "jus soli," they being borned in the continental US where they reside, and were also citizens of the Philippine Islands (dual citizenship) as called for under the US CONSTITUTION in its Fourteenth Amendment.

I was born in then state of the Commonwealth of the Philippine Islands, on January 29, 1945, with dual citizenship. Thus, I met the conditions of citizenship under the FOURTEENTH AMENDMENT definition of a (US) citizen.

In <u>Afroyim v. Rush</u> (1967) the Supreme Court of the United States, hled, 5-4, that Congress has no power "to take away an American citizenship without his assent."

Since then I never went into open court (US Court) to renounce any of my dual citizenship.

6

I am requesting that this Honorable Court to confirmed my having been a U.S. citizen under the doctrine of "jus soli" when born in then "Commonwealth of the Philippine Islands" which had attained its new status as a new "state" and therefore, clothed with the provisions of the U.S. Constitution, and thus, the Fourteenth Amendments of the US. Constitution thus, applied, in my status.

I ask for a trial by jury in this case, and am <u>not</u> specifying an amount of money, but, rather ask the Honorable Court to confirmed by having been born a U.S. citizen, so the Department of the Navy allow me to come within the meaning of the Civil Rights Act of 1964 in Title VII.

The phrased "Aliens employed in positions, or who apply for positions, located outside the limits of the United States" apply to a non-citizen of the country in which the duty station is located, not referenced to a local national employed in that foreign country. <u>See</u> Document by the Department of the Navy, dated May 2, 1949, categorizing its former employees under, as either "alien" or local national (native born), attached.

Respectfully submitted,

Manuel Licudine
43 Graham Street, EBB
2200 Olongapo City, Philippines

Enclosures:
Printed copy of the treaty of Paris, from <u>Treaties and Other International Agreements of the United States, 1776-1949</u>, edited by Charles I. Behans, and copy of National Archives reference report pertaining to the US Treaties and International Agreements.



DEPARTMENT OF THE NAVY
HUMAN RESOURCES OFFICE
(YOKOSUKA, JAPAN)
PSC 473, Box 22, N134
FPO AP 96349-0022

N134
DON # 08-61581-00514
21 February 2008

From: Deputy Equal Employment Opportunity Officer, Human
      Resource Office - Yokosuka, Japan
To:   Rufus F. Nobles, Representative for Manuel Licudine, San
      Narciso, 2205 Zambales, Republic of Philippines, 601

Subj: NOTICE OF DISMISSAL OF FORMAL COMPLAINT OF MANUEL
      LICUDINE V. THE HONORABLE DONALD C. WINTER, SECRETARY OF
      THE NAVY, DON # 08-61581-00514

Ref:  (a) Formal discrimination complaint dtd 5 Feb 08
      (b) Notice of Receipt of Formal Complaint dtd 05 Feb 08
      (c) 29 CFR § 1614

Encl: (1) Counselor's Report
      (2) Notice of Appeal/Petition (EEOC Form 573)

1. The formal discrimination complaint, identified as
reference (a), was received by this office on 5 February 2008,
and acknowledged by reference (b).

2. Based upon a review of reference (a), and enclosure (1),
and in accordance with reference (d), I am hereby dismissing
your client's claim of discrimination for the following
reasons:

   Your client claims he was discriminated against on the
bases of National Origin (Filipino), and reprisal (based on
Public Law No. 100-238, Title I, Section 10) when he was not
granted coverage under the civil service retirement system on
8 January 1988, while employed with the U.S. Navy at Subic Bay
Philippines.

Your client's claim is dismissed for failure to state a claim.

Subj: NOTICE OF DISMISSAL OF FORMAL COMPLAINT OF MANUEL
LICUDINE V. THE HONORABLE DONALD C. WINTER, SECRETARY OF
THE NAVY, DON # 08-61581-00514

3. At 29 CFR 1614.103(c)4 it states that "Aliens employed in positions, or who apply for positions, located outside the limits of the United States" are not covered under Title VII. Your client has provided no evidence that he is a U.S. citizen either by birth or naturalized, and therefore does not have standing to file a claim under reference (d). Although he cites that he should be considered an employee, he does not provide documentation that he is a U.S. citizen, which is the issue in determining if the complaint can be accepted for formal processing under Title VII. Your client cites reasons as to why he should have been covered under the civil service retirement system. This dismissal is not based on the merits of the complainant's claim that he should have been covered under the civil service retirement system. The dismissal of the instant case is based solely on the employee's status as a non-U.S. citizen and therefore he has no standing to file a claim of discrimination under the provisions of reference (c). Under the Commission's regulatory pre-complaint procedures, EEO counseling is a mandatory first step to pursuing a claim of discrimination in the EEO process, and the agency must provide the counseling to any "aggrieved person" who requests it. *See* 29 CFR 1614.104. This office has processed your client's pre-complaint as required. The Commission has, nevertheless, held consistently that claims of unlawful discrimination brought by foreign nationals employed by agencies outside the United States do not come within the purview of the EEOC Regulations. *Fogarty v. Department of State*, Appeal No. 01974143 (August 6, 1998); *Bethune v. Panama Canal Commission*, Request No. 05940402, (July 15, 1994); *Howell v. Department of State*, Appeal No. 01930262 (December 18, 1992). Therefore, your client's claim of discrimination is hereby dismissed for failure to state a claim in accordance with 29 CFR 1614.103, 1614.104 and 1614.105.

4. Your client also alleges discrimination on the basis of reprisal. However, your client does not provide information on protected activity he engaged in while employed with the U.S. Navy. To file a complaint on the bases of reprisal, the complaint must allege that he was somehow involved in protected activity involved in raising allegations of discrimination. Since your client has not identified any involvement in the EEO process as a complainant, witness, or as a discloser of alleged discriminatory action, this complaint is also dismissed for failure to state a claim that is actionable under Title V11.

2

Subj: NOTICE OF DISMISSAL OF FORMAL COMPLAINT OF MANUEL
LICUDINE V. THE HONORABLE DONALD C. WINTER, SECRETARY OF
THE NAVY, DON # 08-61581-00514

5. As the complainant is not a prevailing party, no attorney fees are awarded in connection with his discrimination complaint.

6. This is the final department of Navy decision on your complaint. If you are dissatisfied with the decision to dismiss the complaint, you may file a notice of appeal with the Equal Employment Opportunity Commission ("the Commission") within thirty (30) calendar days of your receipt of this decision. Enclosure (2) should be used when filing your appeal. The appeal form should be submitted to:

> Director, Office of Federal Operations
> Equal Employment Opportunity Commission
> P.O. Box 19848
> Washington, D.C. 20036

7. At the same time that you file your appeal with the Commission, you must provide a copy of the appeal and all supporting statements to this office at EEO N134, PSC 473 Box 22, FPO AP 96349-0022, within 30 calendar days of filing the Notice of Appeal, enclosure (2).

8. An appeal shall be deemed filed on the day it is postmarked, or, in the absence of a postmark, on the date it is received by the Commission. The 30 calendar-day time limit within which an appeal must be filed will not normally be extended by the Commission. If the appeal is not submitted within the time limit, the Commission may extend the time limit if a written explanation showing that you were not notified of the prescribed time limit, were not otherwise aware of it, or circumstances beyond your control prevented you from filing the Notice of Appeal within the prescribed time limit. A copy of your explanation must be forwarded to the EEO Office.

9. If you elect not to appeal to the Commission, you may file a civil action in an appropriate U.S. District Court within 90 calendar days of your receipt of this decision. Filing a civil action will result in termination of the administrative processing of your complaint.

10. If you file a civil action under Title VII of the Civil Rights Act of 1964, as amended, or the Rehabilitation Act of 1973, as amended, and do not have, or are unable to obtain the

3

Subj: NOTICE OF DISMISSAL OF FORMAL COMPLAINT OF MANUEL
LICUDINE V. THE HONORABLE DONALD C. WINTER, SECRETARY OF
THE NAVY, DON # 08-61581-00514

services of a lawyer, you may request the court to appoint a lawyer to represent you. In such circumstances as the court may deem just, the court may appoint a lawyer and ay authorize the commencement of the action without the payment of fees, costs, or security. Any such request must be made within the above-referenced 90 calendar day time limit, for filing suit and in such form and manner as the court may require. Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within 90 calendar days from the date you receive this decision.

11. If you file an appeal with the Commission, you may still file a civil action in U.S. District Court within thirty (3) calendar days of your receipt of the Commission's final decision on y our appeal. A civil action may also be filed any time after 180 calendar days from the date of filing your appeal to the Commission, if a final decision has not bee issued by the Commission's Office of Federal Operations.

12. You are further notified that if you file a civil action, you must name DONALD C. WINTER, Secretary of the Navy, as the defendant. You <u>must include the name of the person and the official title</u>. Failure to name DONALD C. WINTER, Secretary of the Navy, may result in the loss of any judicial redress you may be entitled to.

13. Thomas LaBelle, EEO Specialist, is the point of contact for this complaint and you may reach him by mail at HRO Yokosuka, PSC 473, Box 22, Code N134, FPO AP 96349-0022, or by email at Thomas.labelle@fe.navy.mil.

JUNARION HUBBARD

Copy to (w/o encl):
(1) Manuel Licudine 43 Graham Street, East Bajac-Bajac, 2200
    Olongapo City,
    Rep. of Philippines
(2) HRO Yokosuka N133

4

the British Empire, France, and Japan relating to their insular possessions and insular dominions in the region of the Pacific Ocean, 43 Stat. 1646; 4 Treaties, etc. (Trenwith, 1928) 4863). Replying on April 3, 1924 the Department of State said:

> The controversies referred to in [the treaty] . . . do not, as indicated in the declaration accompanying the Treaty, embrace questions which, under the principles of international law, lie exclusively within the domestic jurisdiction of the respective powers. The question whether independence shall be granted to the Philippine Islands is one which lies exclusively within the domestic jurisdiction of the United States. I, therefore, do not consider that the Treaty mentioned, the declaration accompanying the Treaty, or the Treaty supplementary thereto, concluded February 6, 1922, in any manner affect the exclusive right of this Government to withhold or to grant independence to the Islands in question.

> Representative Fairfield to Secretary Hughes, Mar. 25, 1924, and Mr. Hughes to Mr Fairfield, Apr. 3, 1924, MS. Department of State, file 811b.01/63.

**No treaty obligation**

In a communication of October 3, 1930, addressed to the Department of State, it was asked whether there was any obligation under any treaty entered into at any time on the part of the United States, either with Spain or directly with the Philippine people, wherein the United States was in any manner bound to a promise of independence of the Islands. Replying on October 10, 1930 the Department said that—

> there is no treaty provision by which the United States promises the independence of the Philippine Islands. Such independence lies wholly in the discretion of the United States to be exercised through the appropriate Constitutional method. The United States has made no agreement on the subject nor has there been any authoritative or official promise on the subject by either the executive or Congress. The Sixty-fourth Congress in a preamble to the present Organic Act (Statutes at Large, Vol. 39, Par. 1, p. 545) on this subject and various Presidents have made statements as to the ultimate purpose of the United States in certain circumstances or conditions. No such statements, of course, constitute an official commitment of the Government.

> Representative McCormick to the Department of State, Oct. 3, 1930, and Assistant Secretary Castle to Mrs. McCormick, Oct. 10, 1930, MS. Department of State, file 811b.01/109.

**Act of 1933**

On January 17, 1933 the so-called "Hare-Hawes-Cutting act", to enable the people of the Philippine Islands to adopt a constitution and form a government, to provide for the independence of the islands, and for other purposes, was passed by Congress over a presidential veto (47 Stat. 761–770). The act provided that it should not



496            CHAPTER IV—TERRITORY AND SOVEREIGNTY OF STATES

**High Commissioner**

The act authorizes the President to appoint, by and with the advice and consent of the Senate, a United States High Commissioner to the government of the Commonwealth of the Philippine Islands, to be the representative of the President in the Islands, to have access to the records of the government of the Commonwealth, and to be furnished by the Chief Executive of the Commonwealth with such information as he shall request. The government of the Commonwealth is authorized to be represented in the United States by a Resident Commissioner with a non-voting seat in the House of Representatives. (Sec. 7.)

**Independence in ten years**

Section 10 of the act stipulates that on the fourth day of July immediately following the expiration of a period of ten years from the date of the inauguration of the government of the Commonwealth, the President of the United States "shall by proclamation withdraw and surrender all right of possession, supervision, jurisdiction, control, or sovereignty then existing and exercised by the United States in and over the territory and people of the Philippine Islands . . . and, on behalf of the United States, shall recognize the independence of the Philippine Islands as a separate and self-governing nation and acknowledge the authority and control over the same of the government instituted by the people thereof, under the constitution then in force".

**Neutralization**

Section 11 requests the President of the United States, at the earliest practicable date, to enter into negotiations with foreign powers with a view to the conclusion of a treaty for the perpetual neutralization of the Philippine Islands, if and when Philippine independence shall have been achieved. Section 12 provides that upon the proclamation and recognition of the independence of the Philippine Islands, the President shall notify foreign governments thereof and invite their recognition of such independence.

Section 15 repeals certain laws and parts of laws and provides for the continuance in force of others until they shall be altered, amended, or repealed by the Legislature of the Commonwealth of the Philippine Islands or by the Congress of the United States.

A concurrent resolution accepting the act was adopted by the Senate and House of Representatives of the Philippine Legislature in joint session on May 1, 1934.

**Constitution approved**

A Constitution of the Philippines was adopted by a Philippine constitutional convention on February 8, 1935. On March 23, 1935 the President of the United States notified the Governor General of the Philippine Islands that the proposed Constitution had been submitted to him and that he certified that "the same conforms substantially with the provisions of the Act of Congress approved March 24, 1934".



498                CHAPTER IV—TERRITORY AND SOVEREIGNTY OF STATES

with respect to their financial operations and their currency; and we continue to control their foreign relations. The power of review by this court over Philippine cases, as now provided by law, is not only continued, but is extended to all cases involving the Constitution of the Commonwealth of the Philippine Islands.

Thus, while the power of the United States has been modified it has not been abolished. Moral responsibilities well may accompany the process of separation from this country; and, indeed, they may have been intensified by the new and perplexing problems which the Philippine people now will be called upon to meet as one of its results. The existence and character of the consequent obligations and the extent of the relief, if any, which should be afforded by the United States in respect of them, are matters, not for judicial but for Congressional consideration and determination.

301 U.S. (1937) 308, 313–314, 319–320

Diplomatic formalities

As to the honors which should be accorded the President of the Philippine Commonwealth during a visit to a foreign state, the Department of State on January 29, 1937 said that—

the **Philippine Commonwealth is not an independent state** and its President is not entitled to the honors usually accorded to a chief of state. Sovereignty of the Philippine Islands remains with the United States and the only official of the United States entitled to such honors is the President of the United States. When the Commonwealth Government was inaugurated, it was decided that the High Commissioner to the Philippine Islands, representing the President of the United States, should have precedence over the President of the Commonwealth and that both of those officials should be entitled in the Philippines to salutes of 19 guns.

Until such time as the Philippine Commonwealth becomes entirely free and independent of the United States, it is expected that when honors are rendered any official of the Philippine Commonwealth, the flag of the United States be displayed.

Secretary Hull to Ambassador Johnson, Jan. 29, 1937 (telegram), MS. Department of State, file 811.001 Quezon, Manuel L/55.

In circular instructions to certain diplomatic and consular officers on Apr. 28, 1937 Assistant Secretary Carr said.

"A ruling was made at the time of the inauguration of the Commonwealth Government establishing the rank of the President of the Philippine Commonwealth as analogous to that of a Governor of a State and providing that the President of the Commonwealth would rank with, but after, the United States High Commissioner to the Philippines.

"This same ruling also prescribed that both the United States High Commissioner and the President of the Philippine Commonwealth would be entitled to a salute of nineteen guns in Philippine territory or Philippine waters, on which occasion only the flag of the United States should be flown. In consequence, the President of the Philippine Commonwealth has



500   CHAPTER IV—TERRITORY AND SOVEREIGNTY OF STATES

between the Philippine Islands and the United States during the transition period, while the United States remains sovereign in the islands. These provisions accord with the provisions contained in Section 2(a) of the Act of March 24, 1934. Thus the language of the 10th subsection of Section 1 of the ordinance is the same in phraseology as that of Section 2(a) (10) of the Act of March 24, 1934.

- Philippines not a sovereign state

Both the Acts of Congress and the ordinance appended to the Constitution of the Philippines show clearly that it was intended that full sovereignty over the Philippines was to be retained by the United States during the transition period of ten years provided for in the Act. They show that, while the government of the Philippine Islands was to have a large measure of self-government, they were not to constitute a separate sovereign state under the rules of international law. In other words, it was clearly intended that the United States and the Philippine Islands should continue to constitute a single state. This is made clear, not only by the provision that the foreign affairs of the Philippines "shall be under the direct supervision and control of the United States", but also by the various other provisions contained in the Act, and repeated in the ordinance appended to the Constitution setting forth in detail the continued authority and responsibility of the United States in the Philippines during the transition period. Among them is the provision, to which special attention has already been called, under which the President of the United States may intervene for the preservation of the government of the Commonwealth of the Philippines, for the protection of life, property and liberty and "for the discharge of government obligations under and in accordance with the provisions of the constitution".

. . . it is believed that it is the intent of the statutory provision in question that foreign affairs pertaining to the Philippine Islands are to be conducted and not merely supervised by the United States. The use of the adjective "direct" before the word "supervision" and the addition of the words "and control" seem to emphasize this point. Needless to say, the Government of the United States, acting through the High Commissioner to the Commonwealth of the Philippine Islands, may call upon the government of the latter for cooperation and assistance in matters pertaining to foreign affairs, including the extradition of criminals, as well as the protection of aliens in the islands, but it is believed that communications between the government of the islands and foreign governments must be carried on through the High Commissioner.

It may be well to make mention of the following provision of Section 12(9) of Article VIII of the Constitution of the Philippines:

. "The President shall have power, with the concurrence of a majority of all the Members of the National Assembly, to make treaties, and with the consent of the Commission on appointments, he shall appoint ambassadors, other public ministers and




should, during the period in which the United States retains sovereignty over the Philippines, deal directly with foreign governments in matters relating to the extradition of criminals.

The Acting Attorney General (Keenan) to the Secretary of State (Hull), Apr. 30, 1936, MS. Department of State, file 200.11B/13; Mr. Hull to Attorney General Cummings, May 26, 1937, ibid. 200.11B/16, enclosing a memorandum prepared in the Office of the Legal Adviser (200.11B/15).

With reference to the question of granting a visa to a member of the household of President Quezon of the Philippine Commonwealth, the Department of State on June 3, 1937 said:

"Philippine Government officials are considered to be foreign government officials for visa purposes in view of [the] language of [the] Philippine Independence Act."

Secretary Hull to Consul General Southard, June 3, 1937 (telegram), MS. Department of State, file 811.111 Diplomatic/10231.

## GUANO ISLANDS

### §77

The Department of State expressed the following opinion in 1907 regarding the legal status of guano islands appertaining to the United States:

> . . . the United States possess no sovereign or territorial rights over guano islands. United States citizens who discover guano, or their assigns, are protected by this Government in the prosecution of their enterprise which extends only to appropriation and disposal of the guano thereon. This protection is extended under the Acts of Congress on the subject, compiled in Title 72 of the Revised Statutes of the United States.

The Assistant Secretary of State (Bacon) to Messrs. Dudley and Michener, Jan. 3, 1907, MS. Department of State, file 3126.

To the same effect, see the Acting Secretary of State (Adee) to Mr. Miles Carpenter, July 24, 1907, ibid. Minor File, vol. 12; the Third Assistant Secretary of State (Phillips) to Mr. H. M. Walker, July 13, 1914, ibid. file 811.0141/12; the Acting Secretary of State (Phillips) to Representative John Jacob Rogers, Apr. 28, 1922, ibid. 811.0141SW2/77; the Acting Secretary of State (Castle) to Mr. R. P. Nichols, Sept. 1, 1932, ibid. 811.0141/53.

The act of August 18, 1856 (Sections 5570–78 R.S.; sections 1411–12, Title 48 U.S.C.) does not vest title to any of the Guano Islands to which it applies in the discoverer but merely authorizes the President, in his discretion, to protect the discoverer or his assigns in the exclusive right of occupying such island, rocks or keys for the purpose of obtaining guano and of selling and delivering the same to the United States to be used therein. In Duncan v. Navassa Phosphate Company (137 U.S. 647), the Supreme Court of the United States said, "The whole right con-

ADDRESS REPLY TO<br>OFFICE OF<br>INDUSTRIAL RELATIONS<br>AND REFER TO

# NAVY DEPARTMENT
## WASHINGTON 25, D. C.

OIR:221: ee

2 May 1949

**To:** Field Branch, Bureau of Supplies and Accounts, Navy Department, Cleveland, Ohio

**Attn:** Special Payments Division

**Subj:** Separation of civilian native and alien employees from the rolls of the ___Navy Yard, Cavite, P. I.___, whose names were carried on the rolls under the provisions of the Missing Persons Act, as amended.

1. The following named individual is hereby separated from the rolls of the ___Navy Yard, Cavite, P. I.___.

| SAE | NAME (date of birth) | PAYROLL NO. | POSITION | RATE OF PAY |
|---|---|---|---|---|
| 1919 | Nicanor BANTICAN  4-20-12 | #11553 | Helper | $0.19 per hour |

2. The reason for separation is: ___Termination___.

The effective date is ___2-28-45___. Above named individual was carried in a leave without pay status from ___ ___ ___ ___.

W. H. von Dreele
Deputy Chief
Office of Industrial Relations

Nicanor Bantican
#9 Bahak Bahak St.
Olongapo,
Zambales, P. I.

CC: Service Records Division
    U. S. Civil Service Commission
    Washington 25, D. C.

Navexos 1623

4-18920

Standard Form 50-B
Rev. 8/88
U.S. Office of Personnel Management
FPM Chapter 296

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| LICUDINE MANUEL ALNAIZ | 0325543747 | 01-27-45 | 07-10-92 |

**FIRST ACTION**

| 5-A. Code | 5-B. Nature of Action |
|---|---|
| 356 | TERMINATION - INVOLUNTARY |

| 5-C. Code | 5-D. Legal Authority |
|---|---|
| PNM | REG 351.603 |

| 5-E. Code | 5-F. Legal Authority |
|---|---|
|  |  |

**SECOND ACTION**

| 6-A. Code | 6-B. Nature of Action |
|---|---|
|  |  |

| 6-C. Code | 6-D. Legal Authority |
|---|---|
|  |  |

| 6-E. Code | 6-F. Legal Authority |
|---|---|
|  |  |

7. FROM: Position Title and Number
ELECTRONICS SYSTEMS MECHANIC
K6S0748025

15. TO: Position Title and Number

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PW | 2610 | 20 | 07 | P50.85 | PH |  |  |  |  |  |  |

14. Name and Location of Position's Organization
PRODUCTION DEPARTMENT
ELECTRICAL/ELECTRONICS GROUP
ELECTRONICS SHOP
SHOP 61
US NAVAL SHIP REPAIR FACILITY

22. Name and Location of Position's Organization

**EMPLOYEE DATA**

| 23. Veteran Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1 - None  3 - 10-Point/Disability  5 - 10-Point/Other  1 | 0 - None  2 - Conditional  1 |  | YES ☒NO |
| 2 - 5-Point  4 - 10-Point/Compensable  6 - 10-Point/Compensable/30% | 1 - Permanent  3 - Indefinite |  |  |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| INELIGIBLE FOR LIFE INSURANCE | 9 NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| 5 OTHER | 02-13-73 | F | |

**POSITION DATA**

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1 - Competitive Service  3 - SES General  2  2 - Excepted Service  4 - SES Career Res. | E - Exempt  E  N - Nonexempt | AND MN | 0005 |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| RP-5000-000 | SUBIC BAY PHILIPPINES |

| 40. Agency Data | 41. UIC: 62770 | 42. ORG CODE: 3060602 | 43. COST CNTR: | 44. LOC ID: 51126131003 |
|---|---|---|---|---|

45. Remarks
SF-52 NO SRF8402455; 02-03-92
REDUCTION-IN-FORCE NOTICE (SF-50) ISSUED 06-26-92
ENTITLED TO __20__ MONTHS SEVERANCE PAY BASED ON
     19   YEARS,   06   MONTHS AND   14   DAYS CREDITABLE SERVICE
WITH THE U.S. FORCES PHILIPPINES, WHICH INCLUDES   46   CALENDAR
DAYS EQUIVALENT OF _262_ SICK LEAVE HOURS IN EXCESS OF 480 IN
ACCORDANCE WITH FEPI AND CBA.
SCD FOR SEVERANCE PAY: 12-27-72

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| DEPARTMENT OF THE NAVY | LILLIAN P. PANGANIBAN |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date |  | SUPVY PERS SPEC STAFF IN SR EMPL DT |
|---|---|---|---|---|
| NV70 | 2131 | 06-22-92 | EAP |  |

5 - PART  50-314

2 - OPF Copy - Long-Term Record - DO NOT DESTROY

Editions Prior To 4/87 Are Unusable After
NSN 7540-01-241

H
08-1086
RMU

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Manuel Licudine | Donald C. Winter, Secretary of Navy |
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 99999 (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____ (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| PRO SE (NP) | |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | Case: 1:08-cv-01086 Assigned To : Urbina, Ricardo M. Assign. Date : 6/24/2008 Description: Employ Discrim. |

JURY ACTION

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

| ☐ A. *Antitrust* | ☐ B. *Personal Injury/ Malpractice* | ☐ C. *Administrative Agency Review* | ☐ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br><br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

### ☐ E. *General Civil (Other)* OR ☐ F. *Pro Se General Civil*

| | | | |
|---|---|---|---|
| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability<br><br>**Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157 | **Immigration**<br>☐ 462 Naturalization Application<br>☐ 463 Habeas Corpus- Alien Detainee<br>☐ 465 Other Immigration Actions<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant | ☐ 871 IRS-Third Party 26 USC 7609<br><br>**Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc. | ☐ 460 Deportation<br>☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not Administrative Agency Review or Privacy Act) |

3

| ☐ G. *Habeas Corpus/ 2255*<br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ H. *Employment Discrimination*<br>☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ I. *FOIA/PRIVACY ACT*<br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ J. *Student Loan*<br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ☐ K. *Labor/ERISA (non-employment)*<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ L. *Other Civil Rights (non-employment)*<br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ M. *Contract*<br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ N. *Three-Judge Court*<br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ Multi district Litigation
☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
42 USC 2000

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $   Check YES only if demanded in complaint  JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  ☐ YES ☒ NO   If yes, please complete related case form.

DATE 6/24/08   SIGNATURE OF ATTORNEY OF RECORD NCD

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

rms\js-44.wpd